**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DONALD FINCH, Individually And On Behalf Of All Others Similarly Situated, | Civ. No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| -against- | |
| CRONOS GROUP INC., MIKE GORENSTEIN, and JERRY BARBATO, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

Plaintiff Donald Finch ("Plaintiff") alleges the following based upon the investigation by his counsel, which includes, among other things: a review of public documents, media reports, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cronos Group Inc. ("Cronos" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.     This is a federal class action on behalf of purchasers (the "Class") of the common stock of Cronos, who purchased or otherwise acquired the Company's common stock between May 9, 2019 through March 2, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated under Section 10(b) of the Exchange Act, 17 C.F.R. § 240.10b-5.

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff purchased Cronos common stock at artificially inflated prices during the Class Period, as indicated in the Certification filed herewith, and has been damaged thereby.

7.     Defendant Cronos is a Canadian corporation that maintains its principal executive offices at 720 King St. W., Suite 32028-30, Toronto, Ontario, M5V 2T3.  The Company describes itself as  a "global cannabinoid company with international production and distribution across five continents . . . committed to building disruptive intellectual property by advancing cannabis research, technology and product development and are seeking to build an iconic brand portfolio. Cronos Group's brand portfolio includes PEACE NATURALS™, a global wellness

platform; two adult-use brands, COVE™ and Spinach™; and two U.S. hemp-derived consumer products brands, Lord Jones™ and PEACE+™."

8.      Defendant Mike Gorenstein ("Gorenstein") is, and at all times relevant hereto has been, the Chairman of the Company's Board of Directors, President and Chief Executive Officer. Defendant Gorenstein signed Forms 52-109F2, dated and filed with the Canadian Securities Administrators (the "CSA") on SEDAR on May 9, 2019, August 8, 2019, and November 12, 2019, certifying, *inter alia*, that the Company's interim financial reports for the periods ending March 31, 2019, June 30, 2019, and September 2019 contained no untrue statement of material fact and omitted no material fact required to be stated, and that the interim financial reports fairly presented in all material respects the financial condition and financial performance of Cronos during those periods.

9.      Defendant Jerry Barbato ("Barbato") is, and at all times relevant hereto has been, the Company's Chief Financial Officer.  Defendant Barbato signed Forms 52-109F2, dated and filed with the CSA on SEDAR on May 9, 2019, August 8, 2019, and November 12, 2019, certifying, *inter alia*, that the Company's interim financial reports for the periods ending March 31, 2019, June 30, 2019, and September 2019 contained no untrue statement of material fact and omitted no material fact required to be stated, and that the interim financial reports fairly presented in all material respects the financial condition and financial performance of Cronos during those periods.

10.     Defendants Gorenstein and Barbato are collectively referred to herein as the "Individual Defendants."

11.     The Individual Defendants and Cronos are collectively referred to herein as "Defendants."

## BACKGROUND

12.     In an Annual Information Form filed with the Canadian Securities Administration (the "CSA"), dated March 25, 2019, Cronos described itself as:

> an innovative global cannabinoid company, with international production and distribution across five continents. The Company is engaged in the cultivation, manufacture, and marketing of cannabis and cannabis-derived products for the medical and adult-use markets. Cronos Group is committed to building disruptive intellectual property by advancing cannabis research, technology and product development. With a passion for responsibly elevating the consumer experience, Cronos Group is building an iconic brand portfolio. Cronos Group's portfolio includes PEACE NATURALS™, a global health and wellness brand, and two adult-use brands, COVE™ and Spinach™. Cronos Group operates two wholly-owned license holders in Canada under the Cannabis Act ("License Holders"). Our License Holders are Peace Naturals, which has production facilities near Stayner, Ontario, and OGBC, which has a production facility in Armstrong, British Columbia. Cronos Group has also established five strategic joint ventures in Canada, Israel, Australia and Colombia . . . .

13.     Prior to the start of the Class Period, the Company has described itself as positioned for success.  For example, on March 8, 2019, the Company announced a $2.4 billion (CDN) investment in Cronos by Altria Group, Inc.   In addition, the Company announced a series of strategic joint ventures and acquisitions to expand its operations and business opportunities, including:

- *Technion Research and Development*. On October 15, 2018, the Company announced it had entered into a sponsored research agreement (the Technion Research Agreement") with Technion Research and Development Foundation of the Technion – Israel Institute of Technology ("Technion") to explore the use of cannabinoids and their role in regulating skin health and skin disorders. The preclinical studies will be conducted by Technion over a three-year period and will focus on three skin conditions: acne, psoriasis and skin repair. . . .

- *Ginkgo Strategic Partnership.* On September 4, 2018 the Company announced a strategic partnership (the "Ginkgo Strategic Partnership") with Ginkgo Bioworks, Inc. ("Ginkgo") to produce at commercial scale certain cultured cannabinoids, which are expected to be made at a fraction of the cost of those available through current cultivation methods. If the Ginkgo Strategic Partnership is ultimately successful at developing such cultured

4

cannabinoids, Cronos Group expects to be able to produce large volumes of the target cannabinoids from custom yeast strains by leveraging existing fermentation infrastructure (i.e. breweries or pharmaceutical contract manufacturing operations) without incurring significant capital expenditures to build new cultivation and extraction facilities. . . .

- *NatuEra*. On August 29, 2018, the Company announced a strategic joint venture with an affiliate of Agroidea SAS ("AGI"), a leading Colombian agricultural services provider with over 30 years of research, development and production operations and expertise managing industrial scale horticultural operations for export from Colombia. Each of the Company and AGI owns a 50% equity interest in the joint venture, NatuEra S.à.r.l ("NatuEra"). NatuEra intends to develop, cultivate, manufacture and export cannabis-based medical and consumer products for the Latin American and global markets. . . .

- *Cronos GrowCo.* On July 18, 2018, the Company announced a strategic joint venture with a group of investors led by Bert Mucci (the "Greenhouse Partners"), a leading Canadian large-scale greenhouse operator. Each of the Company and the Greenhouse Partners owns a 50% equity interest in the joint venture, Cronos Growing Company Inc. ("Cronos GrowCo"), and has equal representation on the board of directors of Cronos GrowCo. Cronos GrowCo intends to develop, construct and operate a state-of-the-art 850,000 sq. ft. purpose-built greenhouse for cannabis production. . . .

- *MedMen Canada.* On March 19, 2018, the Company announced a strategic joint venture with MedMen Enterprises USA, LLC ("MedMen"). Each of the Company and MedMen owns a 50% equity interest in the joint venture, MedMen Canada Inc. ("MedMen Canada"). MedMen Canada is focused on developing a Canadian branded retail chain in provinces that permit private retailers, branded products and research and development activities in Canada. MedMen Canada has access to the Company's production facilities and future expansions while leveraging MedMen's brand recognition. . . .

- *Cronos Australia.* On February 5, 2018, the Company announced the launch of Cronos Australia Pty. Ltd. ("Cronos Australia"), its Australian strategic joint venture with NewSouthern Capital Pty Ltd. ("NewSouthern"), for the research, production, manufacture and distribution of medical cannabis. Each of the Company and NewSouthern owns a 50% equity interest in Cronos Australia and has equal board representation. . . .

- *Cronos Israel.* On September 6, 2017, the Company announced its strategic joint venture ("Cronos Israel") with Kibbutz Gan Shmuel ("Gan Shmuel") for the production, manufacture and global distribution of medical cannabis. . . .

5

- *OGBC's Acquisition of Land.* On October 21, 2016, the Company acquired approximately 17 acres of land adjacent to the 13-acre OGBC production campus in the Okanagan Valley of British Columbia for total consideration of $600,000 cash payable at closing. The acquisition more than doubled the acreage of OGBC's production campus.

- *Acquisition of Peace Naturals.* On September 6, 2016, Hortican acquired the remaining issued and outstanding shares of Peace Naturals, increasing its total holdings from 27.3% to 100% of Peace Naturals' issued and outstanding shares. The purchase price payable for the acquisition of the shares not already held by Hortican was approximately $11.8 million, of which (i) $2.9 million was payable at closing, by the issuance, out of treasury, of the Company's common shares, (ii) approximately $6.2 million was payable in cash at closing and (iii) the balance was held back for a period of up to twelve (12) months following closing. The purchase price was based on an enterprise value of Peace Naturals of approximately $22 million. On September 25, 2017, the final holdback payments of the balance of the purchase price were completed in connection with the closing of a loan facility with Romspen Investment Corporation. . . .

## THE MATERIALLY FALSE AND MISLEADING STATEMENTS

14.     Throughout the Class Period, the Company announced increasing quarterly revenues on a year-over-year basis, indicating that Cronos' joint venture and acquisition strategy had been successful.

15.     On May 9, 2019, Cronos issued a press release announcing its financial results and business highlights for the quarter ended March 31, 2019.  In that press release, the Company reported:

- Net revenue was $6.5 million in first quarter 2019, representing a 120% increase from $2.9 million in first quarter 2018, primarily driven by the launch of the adult-use market in Canada. Net revenue increased 15% quarter-over-quarter from $5.6 million in fourth quarter 2018, primarily driven by increased sales in CBD oil, which carries no excise tax reduction and increased sales of dry flower.

- 1,111 kilograms were sold in first quarter 2019, representing a 122% increase from 501 kilograms sold in first quarter 2018, primarily driven by increased

cannabis production and the launch of the adult-use market in Canada. Kilograms sold increased 7% quarter-over-quarter from 1,040 kilograms sold in fourth quarter 2018, primarily driven by increased cannabis production.

- Cost of sales before fair value adjustments per gram sold was $2.69 in first quarter 2019, representing a 14% decrease from $3.13 in first quarter 2018, and an 11% decrease from $3.02 in fourth quarter 2018. The decrease year-over-year and quarter-over-quarter was driven by increased productivity in our cultivation operations.[1]

The Company reported the same financial results in the Unaudited Condensed Interim Consolidated Financial Statements for the Three Months Ended March 31, 2019 and March 31, 2018 filed with the CSA on May 9, 2019.  In addition, in a year-to-year comparison between the first fiscal quarter of 2019 and 2018, the Company reported gross revenues of $6.985 million (CDN), compared to $2.945 million (CDN); gross profits of $13.317 million (CDN) compared to $1.928 million (CDN); net income of $427,693 (CDN), compared to a net loss of $1.05 million (CDN); and an operating loss of $558,000 (CDN), compared to $2.178 million (CDN).   In addition, the Company reported inventory of $25.15 million (CDN) as of March 31, 2019, compared to $11.584 million (CDN) as of December 31, 2018.

16.    In connection with the above referenced Unaudited Condensed Interim Consolidated Financial Statements, Defendants Gorenstein and Barbato signed Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated May 9, 2019, that stated:

1. *Review*: I have reviewed the interim financial report and interim MD&A (together, the "interim filings") of Cronos Group Inc. (the "issuer") for the interim period ended March 31, 2019.

2. *No misrepresentations*: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a

---

[1] Unless otherwise noted, all amounts are in Canadian dollars.

statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.

3. *Fair presentation*: Based on my knowledge, having exercised reasonable diligence, the interim financial report together with the other financial information included in the interim filings fairly present in all material respects the financial condition, financial performance and cash flows of the issuer, as of the date of and for the periods presented in the interim filings.

4. *Responsibility*: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

5. *Design*: Subject to the limitations, if any, described in paragraphs 5.2 and 5.3, the issuer's other certifying officer(s) and I have, as at the end of the period covered by the interim filings

     (a) designed DC&P, or caused it to be designed under our supervision, to provide reasonable assurance that

          (i) material information relating to the issuer is made known to us by others, particularly during the period in which the interim filings are being prepared; and

          (ii) information required to be disclosed by the issuer in its annual filings, interim filings or other reports filed or submitted by it under securities legislation is recorded, processed, summarized and reported within the time periods specified in securities legislation; and

     (b) designed ICFR, or caused it to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with the issuer's GAAP.

5.1 *Control framework*: The control framework the issuer's other certifying officer(s) and I used to design the issuer's ICFR is Internal Control – Integrated Framework (2013) ("COSO Framework") published by the Committee of Sponsoring Organizations of the Treadway Commission.

5.2 *ICFR* – material weakness relating to design:  N/A.

5.3 *Limitation on scope of design*:   N/A.

8

6. ***Reporting changes in ICFR***: The issuer has disclosed in its interim MD&A any change in the issuer's ICFR that occurred during the period beginning on January 1, 2019 and ended on March 31, 2019 that has materially affected, or is reasonably likely to materially affect, the issuer's ICFR.

17.     The Unaudited Condensed Interim Consolidated Financial Statements, dated May 9, 2019, and the Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated May 9, 2019, signed by Defendants Gorenstein and Barbato, were attached as exhibits 99.1, 99.3 and 99.4, respectively, to a Form 6-K filed with the SEC on May 9, 2019.

18.     Defendants knew, or recklessly disregarded, that the statements concerning the Company's reported revenues, income, profits, inventory, and operating loss in the May 9, 2019 press release and Unaudited Condensed Interim Consolidated Financial Statements, and the statements concerning adequacy of the Company's internal controls over financial reporting in the  May 9, 2019 Certifications of Interim Filings, signed by Defendants Gorenstein and Barbato, were materially false and misleading because Cronos improperly recognized revenue from several bulk resin purchases and sales of products through the Company's wholesale channel during the Class Period.  As a result, on March 2, 2020, Cronos announced that it was unable to complete its financial statements for fiscal 2019 due to an ongoing review by the Company's Audit Committee, which was being assisted by outside counsel and forensic accountants.

19.     On August 8, 2019, Cronos issued a press release announcing its financial results and business highlights for the second quarter and first-half ended June 30, 2019.  In that press release, the Company reported:

- Net revenue was $10.2 million in Q2 2019, representing a 202% increase from $3.4 million in Q2 2018, primarily driven by the launch of the adult-use market in Canada. Net revenue increased 58% quarter-over-quarter from $6.5

million in the first quarter of 2019, primarily driven by increased sales in CBD oil, which carries no excise tax reduction and increased sales of dry flower.

- 1,584 kilograms were sold in Q2 2019, representing a 232% increase from 477 kilograms sold in Q2 2018, primarily driven by increased cannabis production and the launch of the adult-use market in Canada. Kilograms sold increased 43% quarter-over-quarter from 1,111 kilograms sold in the first quarter of 2019, primarily driven by increased cannabis production.

- Cost of sales before fair value adjustments per gram sold was $3.01 in Q2 2019, representing a 14% increase from $2.63 in Q2 2018 and a 12% increase from $2.69 in the first quarter of 2019. The increase quarter-over-quarter was driven by higher processing cost on a per gram basis.

That press release was filed as an exhibit to a Form 6-K filed with the SEC on August 8, 2019.

20.     The Company reported the same financial results in the Unaudited Condensed Interim Consolidated Financial Statements for the Three Months and Six Months Ended June 30, 2019 and June 30, 2019 with the CSA on August 8, 2019.  In addition, in a year-to-year comparison between the second fiscal quarter of 2019 and 2018, the Company reported net Gross Revenue of $10.787 million (CDN), compared to $3.394 million (CDN); gross profit of $5.475 million (CDN), compared to $2.14 million (CDN); an operating loss of $20.435 million (CDN), compared to income $490,000 (CDN); and net income of $250.97 million (CDN), compared to $723,000 (CDN).  The Company also reported inventory of $41.667 million (CDN) as of June 30, 2019, compared to $11.584 million (CDN) as December 31, 2018.

21.     In connection with the above referenced Unaudited Condensed Interim Consolidated Financial Statements, Defendants Gorenstein and Barbato signed Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated August 8, 2019, that stated:

1. ***Review***: I have reviewed the interim financial report and interim MD&A (together, the "interim filings") of Cronos Group Inc. (the "issuer") for the interim period ended June 30, 2019.

2. ***No misrepresentations***: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact

or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.

3. ***Fair presentation***: Based on my knowledge, having exercised reasonable diligence, the interim financial report together with the other financial information included in the interim filings fairly present in all material respects the financial condition, financial performance and cash flows of the issuer, as of the date of and for the periods presented in the interim filings.

4. ***Responsibility***: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

5. ***Design***: Subject to the limitations, if any, described in paragraphs 5.2 and 5.3, the issuer's other certifying officer(s) and I have, as at the end of the period covered by the interim filings

(a) designed DC&P, or caused it to be designed under our supervision, to provide reasonable assurance that

(i)  material information relating to the issuer is made known to us by others, particularly during the period in which the interim filings are being prepared; and

(ii)  information required to be disclosed by the issuer in its annual filings, interim filings or other reports filed or submitted by it under securities legislation is recorded, processed, summarized and reported within the time periods specified in securities legislation; and

(b)  designed ICFR, or caused it to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with the issuer's GAAP.

5.1 ***Control framework***: The control framework the issuer's other certifying officer(s) and I used to design the issuer's ICFR is Internal Control – Integrated Framework (2013) ("COSO Framework") published by the Committee of Sponsoring Organizations of the Treadway Commission.

5.2 ***ICFR*** – material weakness relating to design:  N/A.

11

5.3 *Limitation* on scope of design:   N/A.

6. *Reporting changes in ICFR*: The issuer has disclosed in its interim MD&A any change in the issuer's ICFR that occurred during the period beginning on April 1, 2019 and ended on June 30, 2019 that has materially affected, or is reasonably likely to materially affect, the issuer's ICFR.

22.     The Unaudited Condensed Interim Consolidated Financial Statements, dated August 8, 2019, and the Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated August 8, 2019, signed by Defendants Gorenstein and Barbato, were attached as exhibits 99.1, 99.3 and 99.4, respectively, to a Form 6-K filed with the SEC on August 8, 2019.

23.     Defendants knew, or recklessly disregarded, that the statements concerning the Company's reported revenues, income, profits, inventory, and operating loss in the August 8, 2019 press release and Unaudited Condensed Interim Consolidated Financial Statements, and the statements concerning adequacy of the Company's internal controls over financial reporting in the August 8, 2019 Certifications of Interim Filings, signed by Defendants Gorenstein and Barbato, were materially false and misleading because Cronos improperly recognized revenue from several bulk resin purchases and sales of products through the Company's wholesale channel during the Class Period.  As a result, on March 2, 2020, Cronos announced that it was unable to complete its financial statements for fiscal 2019 due to an ongoing review by the Company's Audit Committee, which was being assisted by outside counsel and forensic accountants.

24.     On November 12, 2019, Cronos issued a press release announcing its financial results and business highlights for the three and nine- months ended September 30, 2019.  In that press release, the Company reported:

- Net revenue was $12.7 million in Q3 2019, representing a 238% increase from $3.8 million in Q3 2018, primarily driven by the launch of the adult-use market in Canada and the inclusion of Redwood from the date of closing on September 5, 2019 to the end of the quarter. Net revenue increased 24% quarter-over-quarter from $10.2 million in Q2 2019, primarily driven by increased sales in domestic dried cannabis and the inclusion of Redwood.

- 3,142 kilograms were sold in Canada in Q3 2019, representing a 511% increase from 514 kilograms sold in Q3 2018, primarily driven by increased cannabis production and the launch of the adult-use market in Canada. Kilograms sold increased 98% quarter-over-quarter from 1,584 kilograms sold in Q2 2019, primarily driven by increased domestic wholesale sales.

- Cost of sales before fair value adjustments per gram sold for the non-U.S. market was $2.27 in Q3 2019, representing a 31% decrease from $3.28 in Q3 2018 and a 25% decrease from $3.01 in Q2 2019. The decrease quarter-over-quarter was driven by lower production cost on a per gram basis.

That press release was filed as an exhibit to a Form 6-K filed with the SEC on August 8, 2019.

25. The Company reported the same financial results in the Unaudited Condensed Interim Consolidated Financial Statements for the Three Months and Nine Months Ended September 30, 2019 and September 30, 2019 with the CSA on November 12, 2019.  In addition, in a year-to-year comparison between the third fiscal quarter of 2019 and 2018, the Company reported the Company reported a Gross Loss of $19.364 million (CDN), compared to Gross Profit of $2.094 million (CDN); an Operating Loss of $54.162 million (CDN), compared to $4.877 million (CDN); and Net Income of $787.996 million (CDN), compared to a Net Loss of $7.271 million (CDN).  In addition, the Company reported inventory of $52.865 million (CDN) as of September 30, 2019, compared to $11.584 million (CDN) as of December 31, 2018.

26.   In connection with the above referenced Unaudited Condensed Interim Consolidated Financial Statements, Defendants Gorenstein and Barbato signed Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated August 8, 2019, that stated:

1. **Review**: I have reviewed the interim financial report and interim MD&A (together, the "interim filings") of Cronos Group Inc. (the "issuer") for the interim period ended September 30, 2019.

2. **No misrepresentations**: Based on my knowledge, having exercised reasonable diligence, the interim filings do not contain any untrue statement of a material fact or omit to state a material fact required to be stated or that is necessary to make a statement not misleading in light of the circumstances under which it was made, with respect to the period covered by the interim filings.

3. **Fair presentation**: Based on my knowledge, having exercised reasonable diligence, the interim financial report together with the other financial information included in the interim filings fairly present in all material respects the financial condition, financial performance and cash flows of the issuer, as of the date of and for the periods presented in the interim filings.

4. **Responsibility**: The issuer's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (DC&P) and internal control over financial reporting (ICFR), as those terms are defined in National Instrument 52-109 Certification of Disclosure in Issuers' Annual and Interim Filings, for the issuer.

5. **Design**: Subject to the limitations, if any, described in paragraphs 5.2 and 5.3, the issuer's other certifying officer(s) and I have, as at the end of the period covered by the interim filings

   (a) designed DC&P, or caused it to be designed under our supervision, to provide reasonable assurance that

   (i) material information relating to the issuer is made known to us by others, particularly during the period in which the interim filings are being prepared; and

   (ii) information required to be disclosed by the issuer in its annual filings, interim filings or other reports filed or submitted by it under securities legislation is recorded, processed, summarized and reported within the time periods specified in securities legislation; and

   (b) designed ICFR, or caused it to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with the issuer's GAAP.

5.1 *Control framework*: The control framework the issuer's other certifying officer(s) and I used to design the issuer's ICFR is Internal Control – Integrated Framework (2013) ("COSO Framework") published by the Committee of Sponsoring Organizations of the Treadway Commission.

5.2 *ICFR* – material weakness relating to design:     N/A.

5.3 *Limitation on scope of design*:     N/A.

6. *Reporting changes in ICFR*: The issuer has disclosed in its interim MD&A any change in the issuer's ICFR that occurred during the period beginning on July 1, 2019 and ended on September 30, 2019 that has materially affected, or is reasonably likely to materially affect, the issuer's ICFR.

27.     The Unaudited Condensed Interim Consolidated Financial Statements, dated November 12, 2019, and the Forms 52-10952, Certifications of Interim Filings, Full Certificates, dated November 12, 2019, signed by Defendants Gorenstein and Barbato, were attached as exhibits 99.1, 99.3 and 99.4, respectively, to a Form 6-K filed with the SEC on November 12, 2019.

28.     Defendants knew, or recklessly disregarded, that the statements concerning the Company's reported revenues, income, profits, inventory, and operating loss in the November 12, 2019 press release and Unaudited Condensed Interim Consolidated Financial Statements, and the statements concerning adequacy of the Company's internal controls over financial reporting in the November 12, 2019 Certifications of Interim Filings, signed by Defendants Gorenstein and Barbato, were materially false and misleading because Cronos improperly recognized revenue from several bulk resin purchases and sales of products through the Company's wholesale channel during the Class Period.  As a result, on March 2, 2020, Cronos announced that it was unable to complete its financial statements for fiscal 2019 due to an ongoing review by the Company's Audit Committee, which was being assisted by outside counsel and forensic accountants.

## **THE TRUTH IS REVEALED**

29.     Cronos became a U.S. reporting Company in the fourth quarter 2019.

30.     On February 24, 2020, Cronos made a partial, limited disclosure of problems with its financial reporting, announcing that "it will delay its 2019 fourth quarter and full-year earnings release and conference call, previously scheduled for Thursday, February 27, 2020. The Company has had a delay in the completion of its financial statements and will make a further announcement in a subsequent press release to schedule the date and time of the earnings conference call."

31.     On this news, the price of the Company's stock fell from a close of $7.15 (USD) per share on February 21, 2019 to close at $6.37 (USD) per share on February 24, 2019, the next trading day and the day of the announcement.

32.     On March 2, 2020, Cronos issued a press release announcing that it had filed a Form 12b-25 with the SEC, providing the Company a 15-day extension of the due date for filing its Annual Report on Form 10-K for the year ended December 31, 2019 (the "Form 10-K").  The Company disclosed:

> The Company has been unable to complete its financial statements for fiscal 2019 due to a continuing review by the Audit Committee of the Company's Board of Directors, with the assistance of outside counsel and forensic accountants, of *several bulk resin purchases and sales of products through the wholesale channel and the appropriateness of the recognition of revenue from those transactions*. As previously announced, the Company has delayed its fourth quarter and full year 2019 earnings release and investor conference call, previously scheduled for Thursday, February 27, 2020. The Company plans to release fourth quarter and full year 2019 earnings results and to file its Form 10-K promptly within the extension period of 15 calendar days. However, no assurance can be given that the Company will be able to meet the extended filing deadline. [Emphasis added].

33.     On March 2, 2020, the Company also filed a Form 12b-25 with the SEC stating that it would file a Form 10-K with the SEC with fifteen days because "[t]he Company has been unable to complete its financial statements for fiscal 2019 due to a continuing review by the Audit Committee of the Company's Board of Directors, with the assistance of outside counsel and forensic accountants, of several bulk resin purchases and sales of products through the wholesale channel and the appropriateness of the recognition of revenue from those transactions."  The Company further reported that upon completion of the Audit Committee review, for fiscal 2019, it would report:

- an increase in net revenue;
- a material inventory write-down;
- a material decrease in gross profit;
- a material increase in operating loss;
- a material gain on revaluation of financial liabilities;
- restructuring charges; and
- a material increase in net income.

34.     On this news, the price of the Company's common stock dropped from a close of $6.02 (USD) per share on March 2, 2020 to a close of $5.32 (USD) per share on March 3, 2020.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired Cronos common stock between May 9, 2019 through March 2, 2020, inclusive, seeking to pursue remedies under the Exchange Act (the "Class").

36.     The members of the Class are so numerous that joinder of all members is impracticable.  As of February 27, 2020, there were approximately  348,817,472 shares of the Company's common stock issued and outstanding.  While the exact number of Class members is

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Cronos or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

39.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and financial results of Cronos; and

(c)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42.     During the Class Period, Plaintiff and the Class purchased Cronos' common stock at artificially inflated prices and were damaged thereby.  The price of the Company's common stock significantly declined first when it was disclosed that the Company's financial results for the fourth quarter and full year 2019 would be delayed, and again when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

43.     Defendants acted with scienter because they: (i) knew that the public statements issued or disseminated in the name of the Company were materially false and misleading; (ii) knew that such statements would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

44.     As set forth herein, the Individual Defendants, by virtue of their involvement in the establishment and maintenance of the Company's internal control over financial reporting and due diligence in ensuring the financial information disclosed by the Company fairly presented Cronos' financial condition and performance, made them privy to confidential information concerning Cronos.

19

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

45.     At all relevant times during the Class Period, the market for the Company's

common stock was an efficient market for the following reasons, among others:

(a)     Cronos common stock was traded on the NasdaqGS, with trading

volume of in the millions throughout the Class Period;

(a)     As a regulated issuer, Cronos filed periodic public reports with the

CSA and the SEC;

(b)     Cronos regularly communicated with public investors via

established market communication mechanisms, including through regular disseminations of

press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar

reporting services; and

(c)     Cronos was followed by several securities analysts during the Class

Period, including Bank of America Merrill Lynch, Cowen, Jefferies, Morningstar, Raymond

James, and Stifel, whose publicly available reports and analyses entered the public marketplace.

46.     As a result of the foregoing, during the Class Period, the market for Cronos'

common stock promptly digested current information regarding the Company from all publicly-

available sources and reflected such information in the Company's stock price.  For example, the

price of Cronos' common stock fell from a close of $7.15 (USD) per share on February 21, 2019

to close at $6.37 (USD) per share on February 24, 2019, after the Company made a partial,

limited disclosure of problems with its financial reporting, announcing that it will delay its 2019

fourth quarter and full-year earnings release.  In addition,  the price of the Company's common

stock fell from a close of $6.02 (USD) per share on March 2, 2020 to a close of $5.32 (USD) per share on March 3, 2020, the day after Cronos disclosed that the delay in its fourth quarter and full year 2019 financial results was caused by improper revenue recognition

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made and involve statements of historical fact, such as the financial results of the Company in the prior fiscal quarter.

## FIRST CLAIM

### Violation of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Cronos' common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Cronos' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Cronos financial results and business operations, as specified herein.

52.     Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Cronos' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Company and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Cronos' common stock during the Class Period.

53.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Defendants'

material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of supporting the artificially inflated price of the Company's common stock.

54.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Cronos' common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Cronos' common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material, adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Cronos' common stock during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the truth about the Company's financial results, and the true financial condition of the Company, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Cronos' common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of Cronos' common stock during the Class Period.

## SECOND CLAIM

## Violation Of Section 20(a) Of The Exchange Act Against The Individual Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of Cronos within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and awareness of the Company's operations and/or intimate knowledge of the false statements in connection with the various acquisitions made during the Class Period and the Company's financial results and condition that were disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to data about Cronos' operations and financial results, issued the statements that Plaintiff alleges are materially false and misleading, and/or shortly after these statements were issued and had the ability to cause the statements to be corrected.

60.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

24

61.    As set forth above, the Individual Defendants violated Section 10(b) and Rule 10b-5 by his acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Cronos' common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding damages in favor of Plaintiff and the other Class members against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues that may be so tried.

Dated: March 12, 2020                    **RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY  11530
Tel. No.:  (516) 683-3516
Fax No.:  (302) 654-7530
Email: sdr@rigrodskylong.com
           tjm@rigrodskylong.com

*Attorneys for Plaintiff Donald Finch*

Joshua H. Grabar
**GRABAR LAW OFFICE**
1735 Market Street
Suite 3750
Philadelphia, PA 19103
Tel. No.:  267-507-6085
Email: Cewww.GrabarLaw.com

*Of Counsel*

26

## CERTIFICATION OF PLAINTIFF
## <u>PURSUANT TO THE FEDERAL SECURITIES LAWS</u>

I, Donald Finch ("Plaintiff"), hereby declare as to the following claims asserted under the federal securities laws that:

1.       Plaintiff has reviewed the complaint filed in this action.

2.       Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or to participate in this action or any other litigation under the federal securities laws.

3.       Plaintiff is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition or trial, if necessary.

4.       Plaintiff has made the following transaction(s) during the Class Period in Cronos Group Inc. (NasdaqGS: CRON) securities that are the subject of this action:

| Shares Acquired | Shares Sold | Transaction Date | Price Per Share |
|---|---|---|---|
| 100 | | 1/24/20 | $ 7.63 |

5.       Plaintiff will actively monitor and vigorously pursue this action for the Class' benefit.

6.       Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws during the three years prior to the date of this Certification.

7.       Plaintiff will not accept any payment for serving as a representative party on behalf of the Class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as the Court orders or approves.

DocuSign Envelope ID: 29D97DF4-6CF7-4713-B3DA-9F6C4B008259

I declare under the penalty of perjury that the foregoing is true and correct.

3/12/2020

Executed this ____ day of March, 2020.

_Donald W. Finch_

_____
DONALD FINCH